**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DARRELL BELO,
Plaintiff-Appellant,

v.

CITY OF HIGH POINT; R. E. JONES,
personally and in his official
capacity as a police officer for the
City of High Point; JAMES Y.
HOYNG, personally and in his

official capacity as Chief of Police
for the City of High Point; DAVID
M. HOLDEN, personally and in his
official capacity as a police officer
for the City of Durham; LARRY S.
BOYD, personally and in his official
capacity as police officer for the
City of Durham,
Defendants-Appellees.

No. 96-2236

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CA-94-163-2)

Argued: January 27, 1998

Decided: February 19, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lawrence Ulysess Davidson, III, Charlotte, North Carolina, for Appellant. James Redfern Morgan, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Darrell Belo brought this action, asserting that several City of High Point police officers, when arresting him, engaged in excessive force in violation of his rights under the Fourth Amendment and the North Carolina Constitution. Belo sued the officers, their police chief, and the City. The magistrate judge recommended that summary judgment be granted to all defendants on all claims, except for Officer R. E. Jones, in his individual capacity, as to Belo's federal claim, and Officer Jones and the City as to Belo's state law claims. Belo concurred in this recommendation; Officer Jones objected to it. The district court adopted the magistrate judge's recommendation to grant summary judgment to most defendants but declined to adopt the remainder of the recommendation and instead also granted summary judgment to Jones and the City. Belo appeals. Finding no error, we affirm.

In the early morning hours of October 31, 1993, Belo and his estranged wife, Juanita Belo, each telephoned the High Point Police Department. Belo said his wife would not let him into her house on Furlough Avenue; Ms. Belo said Belo was trying to break into that house. Three police officers, Jones, David Holden, and Harry Boyd, were dispatched to the house and arrived there at 2:18 a.m. Belo had left the area, but Ms. Belo told the officers that he was still in the

2

vicinity. Officer Holden returned to his car and drove around the neighborhood in an attempt to locate Belo, whom he found driving on a nearby street. They returned to the Furlough Avenue house in their respective automobiles.

No lights were on inside the house or on the front porch. Officers Jones and Holden illuminated the area with their flashlights. Aside from the two flashlights, the only light came from a streetlight. As Belo reached the front porch, Tyrone Jackson, the 13-year old son of Juanita Belo, grabbed Belo from behind. The officers separated Belo and Jackson. Holden restrained Belo by pushing him against the front screen door and placing his forearm across Belo's chest. After Belo calmed down, Holden removed his arm from Belo. Belo angrily began cursing Ms. Belo. Again, Holden pushed Belo against the door and told him to calm down.

While Officers Holden and Boyd were on the porch with Belo, Officer Jones inspected the house, using his flashlight to illuminate each room. Holden and Boyd remained on the front porch. Officer Jones found three sleeping children inside the house. He returned to the front porch holding his flashlight at his side. Officer Holden also held an illuminated flashlight; Officer Boyd's flashlight remained on his utility belt.

Officer Jones asked Belo for his address and driver's license. Belo stated that he did not reside at the Furlough Avenue house and was unable to produce his license. After more questioning, Belo admitted that his license had been revoked. Jones then told Belo that he was under arrest for driving with a revoked license. Jones told Belo to turn around and put his hands on the wall; Officer Holden holstered his flashlight and prepared to handcuff Belo. Belo became upset and pulled his arm away from Holden. One officer then grabbed Belo's right arm, twisted it behind his back, and pushed him into another officer. A struggle ensued, and the men moved from the front porch, through the front door, and continued into the unlit living room. Belo has no further recollection of the events that preceded or followed the struggle that led to his injuries.

According to the officers, after being told that he was under arrest, Belo put his hands around the waist of Officer Jones. Both Officers

3

Jones and Boyd believed that Belo was reaching for Jones' gun. In order to prevent him from removing the gun from his utility belt, Officer Jones covered his gun with his right hand. Jones dropped his flashlight from his left hand and pushed Belo away with his left hand. Jones' flashlight hit the floor, and the light from the flashlight went out. The room became dark.

All three officers then grabbed Belo in an effort to bring him under control. Officer Jones yelled for Belo to stop resisting. Officer Holden instructed the others to take Belo to the ground. Belo landed face down on the floor as a result of the take-down, and at least one officer landed on top of him. Once on the floor, Holden and Boyd tried to handcuff Belo. While the room was dark, Officer Holden applied his stun gun to Belo's leg after Belo did not respond to the order to put his hands behind his back.

At that moment, Ms. Belo turned on the overhead light in the living room. As Belo lay face down on the floor, an officer handcuffed Belo's hands behind his back. The officers attempted to bring Belo to his feet. At that time, Belo told the officers that he had been injured. Officer Jones called an ambulance.

Belo was taken to the hospital, where it was discovered that he had suffered a broken neck and was paralyzed below the shoulders. According to Dr. William Bell, a neurosurgeon who examined him at the time, Belo suffered a fractured lamina on the right side of the C5 vertebra in his neck. The fracture put pressure on the spinal cord, resulting in Belo's paralysis. From his examination, Dr. Bell concluded that Belo had congenitally thin laminae in his neck that break more easily than those of an average person. Dr. Bell believed that Belo's thin laminae "more than likely played . . . a significant role" in Belo's injury.

Dr. Bell opined that Belo's injury could have resulted from a person falling on top of Belo and hitting him with a forearm or elbow. According to Dr. Bell, something affixed to one of the officers' uniforms could also have caused Belo's paralysis. Dr. Bell observed no skin damage on Belo's neck. The absence of skin damage is inconsistent with the theory that Belo was struck on the back of the neck with a heavy flashlight.

4

Dr. B. G. Brogdon, a forensic radiologist, reviewed Belo's medical records and documents. Dr. Brogdon opined that a"direct blow to the posterior aspect of the neck centered at the level of the spinous process of C5" is the only explanation for Belo's injury. "The blow would have to have been struck by a very firm object with a relatively narrow leading edge in order to impact with focused force on the spinous process of C5 while sparing the spinous process above and below."

Dr. Bruno Basara submitted a radiology report after his examination and analysis of the CT scan of Belo's neck. In his report, Dr. Basara concludes:

> There is a comminuted depressed fracture of the posterior elements of C5 vertebral body, primarily on the right side, with a small focal area of severe soft issue swelling and edema of the overlying right sided posterior neck muscles. This focal area of soft tissue swelling most likely defines the vector of the force which caused this injury. There is associated hemorrage, which is primarily epidural in location. Correlation with an MRI may provide additional information if clinically indicated.

Despite the detailed nature of his report, Dr. Basara was unable to give any medical opinions regarding causation of the injury.

A former State Bureau of Investigation agent, Carl Jackson, studied the records and discovery material regarding this incident, including the medical records. Based on his review of the materials, Jackson, an expert in homicide and police misconduct investigations, concluded that Belo's neck injury was caused by a blow on the back of the neck with a flashlight from Officer Jones.

On the basis of the above evidence, Belo contended that he forecast sufficient evidence for a factfinder to conclude that Officer Jones struck him on the neck with a flashlight and so used excessive force in effectuating his arrest in violation of the Fourth Amendment and North Carolina Constitution. Belo did not (and does not) assert that Jones or any other officer used excessive force in simply taking him to the ground. Rather, as the district court noted, his case "hinges on

5

his ability to present evidence that" Jones hit him with a flashlight. The district court, in a careful opinion,* concluded that Belo had "failed to present admissible evidence, direct or circumstantial, that Defendant Jones caused [Belo's] injury by striking him on the back of the neck with a flashlight."

In reaching this conclusion, the court held that Carl Jackson, who had no medical, physics, or engineering training or expertise, was not qualified to give an expert opinion on causation based on medical reports, or on the amount of force necessary to break a person's neck. Thus, the court found that Jackson's "conclusion that Defendant Jones struck [Belo] on the back of the neck with a flashlight is mere speculation and conjecture," and therefore "inadmissible."

On appeal, Belo asserts that the district court erred in finding Jackson's opinion testimony inadmissible and that he has forecast sufficient evidence to prove that Jones used excessive force in violation of the Fourth Amendment by striking him on the neck with a flashlight. (Belo does not pursue his state law claims on appeal.) Upon consideration of oral argument, the parties' briefs, the record, and applicable law, we conclude that the district court did not err in any respect. Thus, we affirm on the basis of the district court's thorough opinion. See Belo v. City of High Point, No. 2:94 CV00163 (M.D.N.C. August 23, 1996).

AFFIRMED

_____

*For example, the above recitation of undisputed facts is largely based on that set forth in the district court's opinion.

6